UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.B. CERNELLE,

                    Plaintiff,                           Case Number 03-10291
v.                                                       Honorable David M. Lawson

GRAMINEX, L.L.C., and CYNTHIA MAY,

                    Defendants.
_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES, AND GRANTING MOTION TO DEEM ATTORNEY FEE MOTION A FINAL ORDER

In this dispute over the ownership and right to use certain trademarks of plaintiff A.B. Cernelle, the plaintiff moved to enforce a settlement agreement, which included a permanent injunction, against defendants Graminex, L.L.C., and its chief operator Cynthia May. After a hearing that included the testimony of eight witnesses and consideration of 102 exhibits, the Court found that the defendants had violated the settlement agreement and the injunction and found them in civil contempt. As a remedy, the Court ordered disgorgement of profits, commanded that certain content be removed from Graminex's website, entered a remedial injunction, and ordered attorney's fees to be paid to the plaintiff.

The defendants filed a timely motion to reconsider or alter two aspects of the remedial part of the judgment. They contend that the Court should not have imposed the remedy of disgorgement on Cynthia May but instead should have limited that obligation to Graminex, only. They also assert that the remedial injunction, which enjoins the defendants from selling or transferring product to a customer that the defendants "know *or should know* uses in any way the trademarks listed in the permanent injunction," is vague and impermissibly expands the scope of

the permanent injunction that was part of the settlement agreement. The Court finds no merit in their first argument, but the remedial injunction warrants a slight modification. Therefore, the Court will grant the motion to alter the judgment in part.

Cernelle also filed a timely motion under Rule 54(d) for attorney's fees and expenses. With some adjustments, the Court will order payment of those fees and expenses for the reasons discussed below and in the earlier opinion. The defendants also filed a motion under Rule 58(e) to allow adjudication of that fee motion to mark the time for the appeal period to run under Federal Rule of Appellate Procedure 4(a)(4). The Court will grant that motion.

## I. Background

The original settlement agreement in this case was confirmed by an order that included a permanent injunction. The injunction stated that "defendants Graminex, L.L.C. and Cynthia May, and each of them, their agents, servants, and employees, and all persons in active concert with them, are **RESTRAINED AND ENJOINED** from pledging or alienating the trademarks in dispute . . ." ECF 85, PageID.2036. That injunction "is intended to prevent the negotiation and execution of contracts, agreements, options to purchase, deeds, memoranda of agreements, assignments, licenses, and plans that employ or relate in any manner to the registered trademarks and trademark applications, except as required by the parties' settlement of this litigation." *Ibid.*

On August 24, 2018, plaintiff A.B. Cernelle filed a motion to enforce the settlement agreement and hold Graminex, L.L.C., in contempt for violating certain terms of the permanent injunction. Cernelle alleged that Graminex breached the settlement agreement and violated the injunction by (1) forging partnerships with foreign entities (which included conspiring with Russians) that involved supplying the defendants' pollen product under the CERNILTON brand; (2) hosting a foreign entity's website that promoted flower pollen extract treatment for prostate

cancer branded as "Cernilton"; and (3) citing clinical studies on the defendants' website, which report on the efficacy of the plaintiff's CERNILTON and CERNITIN products, in support of the defendants' own products.

After the evidentiary hearing, the Court granted Cernelle's motion and denied the defendants' motion to modify the injunction. Although the plaintiff's motion was directed at defendant Graminex, only, the Court ordered the disgorgement of profits in the amount of $535,854 against both Graminex and May, finding that the "defendants continuously, systematically, and intentionally violated the relevant terms of the settlement agreement." ECF No. 219, PageID.9304. The Court also found that, "although plain on its face," the defendants' response suggested that the permanent injunction "require[d] clarification." *Id.* at PageID.9322. The Court then ordered that

> defendants Cynthia May Graminex, L.L.C., their agents, servants, attorneys, employees, and all those in active and participation with them who receive actual notice of this order, are **RESTRAINED AND ENJOINED** from (A) selling any product that identified in any manner using any of the trademarks listed in the permanent injunction entered in this case (ECF No. 85), including CERNILTON and CERNITIN; and (B) selling, transferring or conveying in any manner any product to a customer that the enjoined parties know *or should know* uses in any way any of the trademarks listed in the permanent injunction entered in this case (ECF No. 85), including CERNILTON and CERNITIN.

*Id.* at PageID.9327 (emphasis added). The Court entered a corresponding judgment.

## II. Motion for Reconsideration or to Amend the Judgment

The defendants filed a motion for reconsideration under our local rule or alternatively for relief under Federal Rules of Civil Procedure 60(b) or 59(e). To succeed on a motion for reconsideration under E.D. Mich. LR 7.1(h)(1), the defendants must identify (1) a "palpable defect," (2) that misled the Court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). A "palpable defect" is a defect which

"is obvious, clear, unmistakable, manifest, or plain." *Chrysler Realty Co., LLC v. Design Forum Architects, Inc*., 544 F. Supp. 2d 609, 618 (E.D. Mich. 2008).

Under Federal Rule of Civil Procedure 60(b)(1), the Court may relieve a party of its order based on "mistake, inadvertence, surprise, or excusable neglect." That rule "is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002). Alternatively, the Court may amend an order under the catch-all provision of Rule 60(b)(6) "for any other reason that justifies relief." However, such post-judgment relief under Rule 60 is appropriate only in "unusual and extreme situations where principles of equity mandate relief." *Export–Import Bank of U.S. v. Advanced Polymer Scis., Inc*., 604 F.3d 242, 247 (6th Cir. 2010). The Court may "alter or amend a judgment" under Rule 59(e) "if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

## A. Cynthia May's Personal Liability

The defendants argue that the disgorgement remedy should extend only to Graminex and not to May because the Court measured the amount of disgorgement by Graminex's profit on the sales that violated the permanent injunction. They say that May did not profit personally from the misconduct. Moreover, they say that Cernelle never asked for this relief against May herself. Cernelle responds that they did not include May as a target of their disgorgement demand because Graminex misled Cernelle about her ongoing involvement with Graminex.

The Court committed no palpable error by including May in the disgorgement order. As the Court stated in its contempt order, "'[d]isgorgement is an equitable remedy to force a defendant

to give up the amount equal to the defendant's unjust enrichment.'" Contempt Order ECF No. 219, PageID.9324 (quoting *Gavriles v. Verizon Wireless*, 194 F. Supp. 2d 674, 681 (E.D. Mich. 2002); *see also ePlus Inc. v. Lawson Software, Inc.*,946 F. Supp. 2d 449, 455-59 (E.D. Va. 2016) (holding that disgorgement of revenues is permitted if the competitor were found in civil contempt for violating permanent injunction relating to patents). It is accurate to say that Cernelle did not train its sights on May individually when it argued for disgorgement. Cernelle explains, however, that it did not name May in its contempt motion because the defendants "represented in response to Cernelle's pre-motion demand letters that she was no longer a member of Graminex." *See* Pre-Motion Demand Letter, ECF No. 89-5, PageID.2142. Graminex's statement was misleading; May was still the CEO of Graminex in 2018. May Decl., ECF No. 99-7, PageID.2356.

May contends that she led the company through 2011, but the evidence presented at the contempt motion hearings established that May was the architect of the plan to sell Graminex's product to foreign customers using shipping documents that identified them as Cernelle's product, in direct violation of the permanent injunction and settlement. May established the relationships with the Russian, Thai, and Australian distributors that sold the offending products branded with Cernelle's trademarks. The Court held that the hearing testimony "established that the defendants used the plaintiff's marks in order to circumvent import restrictions in Russia, Thailand, and Australia," and in doing so, "plainly violated" the permanent injunction. Contempt Order, ECF No 219, PageID.9314. May played a key role in this conduct:

> Both Cynthia and Heather May testified, however, that Graminex filled orders for CERNILTON, and in some cases CERNITIN, from customers in Russia, Thailand, and Australia. To be sure, they asserted that they filled those orders with Graminex's own product, and, at least in some instances, provided the customer with product information that described Graminex's formulation of the flower pollen tablets, which, they asserted, was different from and superior to the actual CERNILTON and CERNITON products. But they identified the product on

> packing and shipping documents as CERNILTON or CERNITIN, explaining that
> their customers wanted them to do that.

*Id.* at PageID.9303. The evidence clearly established that "Cynthia May and Graminex were well aware of the permanent injunction and its restrictions and requirements" but "made no good-faith effort to comply with the injunction; instead, they willfully violated it." *Id.* at PageID.9326; *see also id.* at PageID.9304 (finding that the "defendants continuously, systematically, and intentionally violated the relevant terms of the settlement agreement.").

Moreover, the settlement agreement and permanent injunction lists May by name as a person whose conduct is to be regulated. She plainly was on notice that the conduct she indulged in was prohibited, despite the fact that Cernelle did not specifically direct its contempt motion at her. May has been a party to the litigation since its inception, was subject to the permanent injunction and settlement agreement, and was directly involved in Graminex's violation of the injunction and subsequent legal defense for the defendants. Her own actions put her in contempt of court and in breach of her duties under the settlement agreement.

Likewise, there is no merit in the defendants' argument that the disgorgement order as to May is improper because the profits belonged to Graminex and not her. Corporate officers may be held personally responsible for the disgorgement of corporate profits resulting from wrongful conduct of a corporation that the officer directed. *See Talent Mobile Dev., Inc. v. Headios Group*, 382 F. Supp. 3d 953, 963 (C.D. Cal. 2019) (denying motion to alter or amend judgment to preclude disgorgement against CEO because "[c]orporate officers are 'personally liable for [a] corporation's . . . trademark infringements when they are a 'moving, active conscious force' behind the corporation's infringement.'") (quoting *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1106 (S.D. Cal. 2018)); *see also CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, No. 11-13744,

2016 WL 1637560, at *9 (E.D. Mich. Apr. 26, 2016) (finding a corporate officer personally liable for the daily profits the corporate defendant earned from conduct that violated an injunction).

Ordering May to disgorge Graminex's ill-gotten gains did not constitute a "palpable defect," ED. Mich. LR 7.1(h)(3), or a "substantive mistake of law or fact in the final judgment or order." *Reyes*, 307 F.3d at 455.

## B.  Remedial Injunction

The defendants explain that they challenge the remedial injunction because it was "not clear" to them that "the Court necessarily intended to go as far as it did in ordering a 'should know' injunctive order where such an order (a) goes beyond the Permanent Injunction and (b) would impose uncertain and ill-defined new duties upon Graminex."  Mot. for Reconsideration, ECF No. 231, PageID.10021.  They contend that a "should know" provision creates a duty to inquire of its customers' marketing practices, which goes beyond the requirements of the settlement agreement and permanent injunction.  They suggest that "reason to know" is more appropriate language, which would avoid a vagueness problem and more appropriately conform to the original settlement.

The defendants' assertions have some merit, but not because the current remedial injunction is vague.  True, an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts sought to be restrained . . . ." Fed. R. Civ. P. 65(d)(1)(B), (C). Injunctions must be specific enough "so that those who must obey them will know what the court intends to require and what it intends to forbid*." S. Ohio Coal Co. v. United Mine Workers of Am*., 551 F.2d 695, 711 (6th Cir. 1977) (quoting *Longshoremen v. Marine Trade Assoc*., 389 U.S. 64, 76 (1968)).  But they have cited no authority that supports the idea that the "should know" language is too vague to satisfy Rule 65.

The case they rely on, *Intel Corp. Inv. Policy Comm. v. Sulyma*, --- U.S. ---, 140 S. Ct. 768 (2020), has nothing to do with permanent injunctions or the use of "should know" language. The case addressed the "actual knowledge" requirement triggering the three-year limitations period under the Employee Retirement Income Security Act of 1974 (ERISA). *Id.* at 773. The Court grappled with the question of "whether a plaintiff necessarily has 'actual knowledge' of the information contained in disclosures that he receives but does not read or cannot recall reading." *Ibid.* The holding — that a plaintiff does not have "actual knowledge" under such circumstances — clarifies what it means to have "actual knowledge" in the ERISA context, it does not support the defendants' argument that the use of "should know" in a permanent injunction is impermissibly vague.

In fact, courts often use such "should know" language in permanent injunctions. *See*, *e.g.,* *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 641 (N.D. Ill. 2016) (permanently enjoining defendant from selling products to any entity "Defendants know or should know are engaged" in violation of plaintiff's intellectual property rights); *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1136 (W.D. Wash. 2012) (permanently enjoining defendants from purchasing, selling, or shipping any "mobile device that Defendants know or should know bears" the plaintiff's trademark); *Tracfone Wireless, Inc. v. Adams*, 98 F. Supp. 3d 1243, 1264 (S.D. Fla. 2015) (permanently enjoining defendant from "facilitating or in any way assisting other persons or entities who [the defendant] knows or should know are engaged in a scheme to fraudulently acquire" the plaintiff's services); *Life Alert Emergency Response, Inc. v. ConnectAmerica.com, LLC*, No. LACV1303455JAKSSX, 2014 WL 12596489, at *14 (C.D. Cal. May 13, 2014) ("[I]t is not unreasonable to impose injunctive relief that prohibits Defendant from working with any person or entity whom it knows 'or after a reasonable inquiry should know' is misusing plaintiff's intellectual property").

However, the "should know" language does expand the scope of the original permanent injunction. Cernelle contends that the defendants' argument impermissibly rehashes the issues already presented and decided, which neither Rules 60(b), 59(e), nor Local Rule 7.1(h)(3) allows. *See Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 395 (6th Cir. 2007) ("parties cannot use a motion for reconsideration [under Rule 59(e)] to raise new legal arguments that could have been raised before a judgment was issued."); *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (motion for reconsideration "does not afford parties an opportunity to reargue their case."). But the defendants are not contesting the clarifying injunction as a permissible remedy for contempt. They are challenging the injunction's specific language, a point that Cernelle concedes was not debated in the pre- and post-hearing briefs.

The defendants contend that the "should know" language obligates them to police their customers' sales practices, which is a burden they did not bargain for in the original settlement. They believe that the Court should substitute the phrase "reason to know" as more consistent with the settlement agreement. The defendants read the language correctly.

> "Reason to know" means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist. **"Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question** and that he would ascertain the existence thereof in the proper performance of that duty.

Restatement (Second) of Torts § 12 (1965), comment a. That understanding reflects Michigan law. *Thomson v. Eagle-Picher Indus., Inc.*, 731 F. Supp. 239, 241-42 (E.D. Mich. 1990) (citing *White v. Chrysler Corp.*, 421 Mich. 192, 203, n.15, 364 N.W.2d 619 (1984)).

There is no question that the Court has the authority to issue a remedial injunction as part of its "inherent power to enforce compliance with their lawful orders through civil contempt."

*Shillitani v. United States*, 384 U.S. 364, 370 (1966). However, courts do not have the authority to expand the terms of a previously imposed permanent injunction that derives from a settlement agreement of consent decree. *See, e.g., Rosen v. Tennessee Comm'r of Fin. and Admin.*, 288 F.3d 918 (6th Cir. 2002) ("[C]onsent decrees are subject to ongoing judicial review and must be construed to preserve the position for which the parties bargained.") (quotation marks omitted); *Johnson v. Robinson*, 987 F.2d 1043, 1046 (4th Cir. 1993) ("A federal district court may not use its power of enforcing consent decrees to enlarge or diminish the duties on which the parties have agreed and which the court has approved.") (citing *United States v. Michigan*, 940 F.2d 143, 159 (6th Cir. 1991)).

Imposition of a duty of inquiry in fact expands the defendants' obligation to the plaintiff concerning the use of the marks in question. The original permanent injunction barred the defendants from participating or formulating in any "plans that employ or relate in any manner to the registered trademarks." Settlement Order, ECF No. 85, PageID.2306. In the opinion on the contempt motion, the Court found that this "language plainly applied to a 'plan' by the defendants to sell to foreign customers Graminex products misidentified on packing and sales documents as Cernelle-branded products." Contempt Order, ECF No. 219, PageID.9322. And the defendants did flagrantly violate the original permanent injunction. But that was because they had prior knowledge of how the product would be labeled, packaged, and shipped. In other words, they had reason to know that their customers would use in some way the protected marks. Use of the term "reason to know" more faithfully cleaves to the mandate of the settlement agreement and permanent injunction. It clarifies but does not expand the defendants' obligations. The Court will grant the motion as to this aspect of the judgment.

### III. Attorney's Fees and Costs

In the contempt order and judgment, the Court ordered the defendants to pay Cernelle's attorney's fees and expenses. Cernelle then filed a timely motion for attorney's fees under Federal Rule of Civil Procedure 54(d)(2) requesting fees and costs totaling $911,766.11. The defendants object to the amount.

An award of attorney's fees and expense is among the "appropriate" equitable remedies for a successful moving party "in a civil contempt proceeding." *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983) (citing *Chas. Pfizer & Co. v. Davis-Edwards Pharmacal Corp.,* 385 F.2d 533, 538 (2d Cir. 1967)); *see also McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000) ("An award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated.") (citing *Redken Lab., Inc. v. Levin*, 843 F.2d 226 (6th Cir. 1988)). The amount of the award must be "reasonable," generally as measured by the lodestar method. *NE. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. at 702 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Cernelle's fee and expense request breaks down as follows:

| Law Firm/Entity | Attorney's Fees | Costs | Totals |
|---|---|---|---|
| Cozen O'Connor (primary counsel) | $673,526.04 | $69,415.97 | $742,942.01 |
| Moffett, Vitu, Lascoe, Packus, and Sims (local counsel) | $83,789.00 | $929.98 | $89,450.91 |
| Bowman and Brooke (local counsel) | $15,697.50 | $664.03 | $16,361.53 |
| Zacco (European law firm) | $787.40 | N/A | $787.40 |
| McCullough Robertson (Australian law firm) | $3,509.69 | $512.13 | $4,021.83 |
| Petosevic (Russian law firm) | $1,252.92 | N/A | $1,252.92 |
| Hartzer Consulting (Search Engine Optimization Consultants) | N/A | $16,693.12 | $16,693.12 |

| Alvarez & Marsal (professional services corporation) | N/A | $40,256.39 | $40,256.39 |
| **TOTAL** | **$778,562.55** | **$128,471.63** | **$911,766.11** |

The defendants argue that the amounts are not reasonable because the hourly rates for the Cozen O'Connor lawyers are billed at Philadelphia rates instead of local rates; the documentation includes block billing and partially redacted entries; some fees are charged for the defense in a separate case Graminex brought against Cernelle attacking the viability of the trademarks; fees charged by local counsel are for redundant work and charged at unreasonable hourly rates; and many of the expenses are unreasonable. Some of these arguments are well taken.

### A.  Hourly Rate

A reasonable rate for the purpose of the lodestar calculation is "the rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *NE. Ohio Coal. for the Homeless.,* 831 F.3d at 715 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Sources of information include "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id.* at 716 (internal quotation omitted). Where the fee applicant seeks to recover fees for an out-of-town "specialist," the district court must determine "(1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Id.* at 716 (citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995).

Cernelle's choice of the Cozen O'Connor firm and its partner Robert Hayes was reasonable, not because of any level of "specialty" in trademark law, but because of the existing relationship with the firm and its involvement in this litigation from its outset. The case traces its roots to disputes between Cynthia May and John Tramontana nearly 20 years ago, with Hayes and

his firm representing the latter. Attorney Hayes represented the plaintiff when it negotiated and entered into the settlement agreement which is the subject of the present dispute. The plaintiff's choice of counsel for these enforcement proceedings is a natural development in the litigation. *See Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 329-330 (6th Cir. 2008) (approving choice of out-of-town counsel based on a long-standing attorney-client relationship and because local counsel would have had to get "up to speed" on the facts, increasing the fees); *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 139 (4th Cir. 1994) (approving choice of non-local counsel who had served as the party's attorney "for almost ten years" and had drafted the agreement in question).

That does not mean, however, that the defendants should be required to pay attorney's fees measured by the rates charged in Philadelphia, which are considerably higher than those charged by attorneys of comparable experience in this local market. Where competent local counsel was available at a lower rate, "the district court may apply local market rates to the services provided by the out-of-town specialist." *NE. Ohio Coal. for the Homeless.,* 831 F.3d at 716.

Robert Hayes, a firm shareholder with nearly forty years' experience, charged $625 per hour; Calli Padilla, a firm member with nine years' experience, charged $325 per hour; and other associates charged between $270 to $390 per hour. Hayes Decl., ECF No. 233, PageID.10221-22. These ranges comport with fees charged by similar firms in Philadelphia. *See*, *e.g., In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 1871, 2012 WL 6923367, at *10 (E.D. Pa. Oct. 19, 2012) ("partners at GSK's Philadelphia based firm (Pepper Hamilton) bill up to $825 per hour, and partners at other Philadelphia law firms have similar top hourly rates ($900 at Cozen O'Connor, $875 at Duane Morris, $750 at Saul Ewing, and $725 at Fox Rothschild)"); *see also In re Viropharma Inc., Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *18 (E.D. Pa. Jan. 25, 2016)

(hourly billing rates of all of plaintiff's counsel ranged from $610 to $925 for partners); *see Attorney Fees*, Community Legal Services, https://clsphila.org/about-community-legal-services/attorney-fees/ (last accessed May 12, 2021) (listing average rate in Philadelphia for attorney with over 25 years of experience is between $650 and $700 per hour).

The fee charges exceed the rates charged in the local market. Cozen O'Connor apparently established their rates for the plaintiff in 2017 and they have not changed. According to the State Bar of Michigan's 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report, the hourly rates charged by law firm partners range from $225 (25th percentile), $290 (median), $400 (75th percentile), to $552 (95th percentile). *2017 Economics of Law Practice Income and Billing Rate Summary Report*, State Bar of Michigan, 4 (2017) https://www.michbar.org/file/pmrc/articles/0000153.pdf. According to the American Intellectual Property Law Association Practice 2017 Report of the Economic Survey (AIPLA), in this local market, "the median rate for a partner is $378, and the median rate for an associate is $260." *N. Atl. Operating Co., Inc. v. eBay Seller Dealz_for_You*, No. 17-10964, 2018 WL 3031092, at *9 (E.D. Mich. June 19, 2018). Cozen O'Connor's rates are above the 95th percentile of the rates charged by local attorneys. And there is no suggestion by any party that any "[special] expertise was necessary to the litigation." *NE. Ohio Coal. for the Homeless.,* 831 F.3d at 716 (quotation marks omitted).

Also, one must remember that an award of attorney's fees and expenses in a contempt proceeding is an *equitable* remedy. The award must be fair to both sides considering all the circumstances of the case, which includes the reality that this case arose primarily in the Midwest and was litigated in a federal court in Michigan. The plaintiff, of course, is entitled to hire whomever it chooses to represent it. But the defendants should not be saddled with economic

consequences of that choice beyond a rule of reason. "The essential goal in shifting fees [] is do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The Court "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Ibid.*

The Court will approve an hourly rate for attorney Hayes of $550 and a blended rate for associates of $275, which amounts to an approximate twelve percent discount from the claimed charges.

### B. Time Expended

The defendants urge the Court not to credit time charged in "block billing" formats. They contend that lumping work together in a single time entry makes it impossible for the Court to determine whether those fees are reasonable because the amount of time spent on each task cannot be ascertained. *See Howe v. City of Akron*, 705 F. App'x 376, 383 (6th Cir. 2017) (affirming reduction in fee award for block billing).

"The key requirement for an award of attorney's fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Inwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). Although block billing can be problematic, the defendants have not specifically identified any problematic block entries. The defendants' argument to this point is vague and does not appear to involve the concerns associated with block billing. For instance, Cozen O'Connor billed the following two block entries:

> 2/06/19, CJP, 4.50 hours: Continue to assist with preparation for depositions of Cynthia and Heather May; prepare correspondence to counsel for Graminex requesting supplemental documents; confer with counsel for Thread re: potential

for rescheduling deposition of K. Cesarz; prepare draft Exhibit List for hearing re: Motion for Contempt.

2/06/19, RHQ, 2.20 hours: Prepare for C. May deposition by reviewing transcript of her testimony in preliminary injunction action (.8); telephone conference with Ken Tinebo re: Court rulings, deposition scheduling (.5); email K. Tinebo re: follow-up (.2); email exchange with Petijean re: deposition scheduling (.4); review of email from C. Padilla re: discovery responses in underlying action (.3).

Cozen Invoice, ECF No. 233-15, PageID.10356. Although the entries are billed in a block format, they do not involve muddling substantive attorney work with "purely clerical tasks." *Lundsted*, 2016 WL 1665154 at *6.

The defendants have not demonstrated that the block entries were so improper as to justify reducing the requested fee award on that basis.

A similar problem may arise from redacted time entries: without knowing the nature of the work charged, it is not possible to determine the reasonableness of the time charged or whether the work arises from this proceeding. *See Sarver v. Hurt Locker, LLC*, No. 2:10-cv-09034, 2011 WL 13135126, at *5 (C.D. Cal. Dec. 8, 2011) (reducing fees award due to excessive redactions and concluding that "[t]hough cognizant of Defendant's duty to preserve attorney-client privilege, this Court cannot determine the reasonableness of these entries absent a general description from Defendant as to the nature of the redacted work.").

The defendants did not provide an estimate of the time billed under the partially redacted billing entries. After searching through all the invoices, the time billed under the problematic entries appears to total about 14.3 hours. ECF No. 233-2, PageID.10242-43; ECF No. 233-6, PageID.10268; ECF No. 233-10, PageID.10307; ECF No. 233-13, PageID.10331; ECF No. 233-14, PageID.10344, 10347; ECF No. 233-21, PageID.10432. The Court will discount the fee request at the blended hourly rate for associates — $275 — which is a reduction of approximately $3,900.

The defendants also argue that some of the time entries do not relate to the contempt proceedings. Cernelle acknowledges that it is only authorized to seek fees arising from this case; however, Cozen O'Connor included some block-billed time entries that reference Cernelle's motion to dismiss a related declaratory judgment action (*Graminex LLC. v. A.B. Cernelle*, No. 18-13727). The defendants seek a reduction in the requested fee award by about $7,000. But they do not attempt to calculate the time billed under the improper billing entries, leaving the Court to pour through over 200 pages of billing records, entry-by-entry, in search of any reference to the declaratory judgment action. The Court will not do that.

The defendants quote three instances where the time entries included services related to Graminex's declaratory judgment action, but in each instance the time devoted to those matters was intertwined with services devoted to this action. Moreover, in his declaration, attorney Hayes averred that he attempted to redress this problem by reducing the time charged. The Court is satisfied that no reduction is needed to address this objection.

After discounting the rates and accounting for the disqualified time charged, the amount of fees for Cozen O'Connor's charges will be $593,000.

### C. Local Counsel

Included in Cernelle's fee request is $83,789 for charges by local counsel Moffett, Vitu, Lascoe, Packus, and Sims. The defendants argue that the amount should be reduced to about $19,860 because Moffett, Vitu's charges were unnecessary and redundant, and their hourly rates were unreasonable.

The local rules of this district require out-of-town counsel who are not "active member[s] of the State Bar of Michigan" to designate as local counsel an attorney who has an office in the district. E.D. Mich. LR 83.20(f)(1). Local counsel must "have the authority and responsibility to

conduct the case if non-local counsel does not do so."  To comply with that rule, Cozen O'Connor, on Cernelle's behalf, retained Moffett, Vitu, and later Bowman and Brooke, as local counsel. Billings were made by partner Stephen Moffitt at $450 per hour, partner Thomas Vitu at $350 per hour, and three-year attorney Brent Moffett at $325 per hour.  Based on the work they did, which consisted mostly of reviewing documents with little input into content, the hourly rates are excessive.  A more appropriate rate for that work is the median hourly rate for partners ($290) and associates ($225) according to the State Bar of Michigan's 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report.

Moffitt, Vitu's billing records indicate that it mostly charged for "review[ing]" documents, at least 129.8 hours by the defendants' count, which translates into $57,460 in fees.  Local counsel had an obligation to keep abreast of the litigation in the event that it had to step in for Cozen O'Connor, but the level of redundancy represented by that billing generally is not compensable in this district.  *See Gratz v. Bollinger*, 353 F. Supp. 2d 929, 945 (E.D. Mich. 2005) (permitting recovery for only 55 out of 323.50 hours billed by local counsel because "most of [local counsel's] billing entries reflect time spent 'receiving and reviewing' materials" created or already reviewed by other attorneys).  Moreover, the billing descriptions do not support the charges.  For example, Stephen Moffett billed at least $2,250 for "[l]etter from attorney via email" without any other description.  Moffett Invoice, ECF No. 233-28.  And associate Bret Moffett's role was mostly limited to printing copies of briefs and delivering them to chambers, an administrative task that does not justify attorney's fees.  *See Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939 (3rd Cir. 1995) ("We have cautioned on a number of occasions that when a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable.").

The billing records reveal other non-compensable charges. For instance, Moffett charged $45.00 to send a letter to Hayes about Cernelle's nonpayment of its bills. The invoices also included a $225.00 fee relating to Moffett's motion to withdraw as counsel.

After discounting the hourly rates and the hours claimed, the appropriate amount of fees for the Moffett Vitu firm as local counsel will be $25,000. The fees and costs charged by Bowman and Brooke of $16,361.53, European law firm Zacco of $787.40, Russian law firm Petosevic of $1,252.92, and Australian law firm of McCullough Robertson of $3,509.69 have not been challenged and will be allowed.

### D. Expenses

The defendants also argue that the requested expenses of $128,471.63 should be reduced by discounting some of the charges for expert witnesses, computerized legal research charges, and hotel, flight, and meal expenses for attorneys. Their attack on the computerized research charges of $21,056 is based on a string of 1990s-vintage cases that analogize those charges to library maintenance expenses, which are non-compensable overhead. Those cases, however, do not reflect the contemporary view. *See, e.g.*, *Potter v. Blue Cross Blue Shield of Mich.*, 10 F. Supp. 3d 737, 773 (E.D. Mich. 2014) ("While the Sixth Circuit has not specifically addressed the issue of whether computer legal research, such as WESTLAW or LEXIS, is recoverable, a number of other courts have done so . . . those judges who have awarded the costs of computerized research are in the majority and the reasons for doing so are well founded.") (citing *Gratz*, 353 F. Supp. 2d at 945; *Ousley v. Gen. Motors Ret. Program for Salaried Emps.*, 496 F. Supp. 2d 845, 852 (S.D. Ohio 2006)).

Still, Cernelle must justify the charges by demonstrating how the legal research was connected to the contempt proceeding. *See Smith v. Serv. Master Corp.,* 592 F. App'x 363, 639

(6th Cir. 2014). The prevailing rationale is that per-search charges generally are recoverable, whereas prorated blanket access fees are not. *Id.* at 638 ("If the lawyer or firm pays a blanket access fee, rather than per search, there is no reason to distinguish the on-line research cost from the cost of the books that at one time lined the walls of legal offices which was treated as overhead."); *see also Auto Alliance Int'l v. United States Customs Serv.*, 155 F. App'x 226, 229 (6th Cir. 2005) (affirming district court's denial of electronic legal research costs because plaintiff failed to establish in its affidavit "how th[e] amount was calculated and the precise basis of the charge (e.g., whether it was prorated based on a flat fee, or whether any charges were incurred for specific research on the case)).")

Cozen O'Connor's invoices identified each research charge by the date of the research, the person who conducted the research, the value of the research, and a basic description. This itemized breakdown of individual research charges justifies the inference that the charges are made on a per-search basis. But the Sixth Circuit has found that similar billing descriptions "without more do not establish that each charge was reasonably related to the issues raised in the case." *Smith,* 592 F. App'x at 369. Based on that precedent, those charges will be disallowed.

The defendants contend that the Court should not award $2,903.25 of the claimed $19,596.37 expert witness fees, as that portion is referable to search engine optimization expert Contract Discovery Solutions, because Cernelle failed on that claim. As with attorney's fees, however, courts generally do not parse the arguments and award expenses only for the successful ones. *Hensley*, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); *Bronco's Entm't, Ltd. v. Charter Twp. of Van Buren*, No. 99-70197, 2007 WL 2221406, at *3 (E.D. Mich. July 31, 2007) ("Attorney's fees may be awarded

for unsuccessful claims as well as successful ones, where they are "'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories."). The search engine optimization issue is not "distinct in all respects" from Cernelle's successful contempt claim. *See Hensley*, 461 U.S. at 440. Rather, the claims were "inextricably intertwined" as the issue of confusing Graminex and Cernelle online goes hand-in-hand with the alleged infringement of the Court's permanent injunction. *See Bronco's Entm't, Ltd.,* 2007 WL 2221406, at *3. That expert witness expense is recoverable.

Cernelle included a duplicate charge of $1,845 as both an "expense" for services of the Moffett Vitu firm and as an attorney fee for local counsel. The expense request must be reduced by the amount of that supplicate charge.

The defendants also challenge Cernelle's request for $1,680.77 in meal expenses and $9,096.73 for travel to Sweden to attend a deposition. The Court has discretion to order recovery of meal and travel expenses. *Disabled Patriots of Am., Inv. v. Reserve Hotel, Ltd.*, 659 F. Supp. 2d 877, 889 (N.D. Ohio 2009) (citing *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)) (travel time); *Brooksbank v. Koch*, No. 16-00668, 2019 WL 7407401, at *7 (W.D. Ky Apr. 15, 2019) (meals and lodging). But here, the Court had ordered the deposition to be taken remotely. Attorney Hayes maintains that it was impossible to prepare witnesses and defend the depositions effectively by videoconference. And he says that he discounted the expensive last-minute international airfare. But if there is anything this last year has taught us, it is that remote communication is feasible, even if it may not be as effective as in-person meetings. That travel expense, although perhaps preferred, was not a necessary expense that the Court will require the defendants to pay.

The expenses of professional services corporation Alvarez & Marsal have not been challenged; nor have the costs billed by Moffett, Vitu, Bownam and Brooke, or McCullough Robertson. After adjustments, the Court will allow expenses of $94,793.12.

## IV. Rule 58(e) Motion

The defendants filed an unopposed motion under Federal Rule of Civil Procedure 58(e) for an order deeming the attorney's fee motion to have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59. Rule 58 states that "if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59." Fed. R. Civ. P. 58(e). Rule 4(a), in turn, states that "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion . . . (v) for a new trial under Rule 59." Fed. R. App. P. 4(a)(4)(v).

That relief may not be necessary, as the timely-filed motion to alter the contempt judgment is adjudicated simultaneously with the attorney's fee motion. Nonetheless, to avoid confusion over the commencement of the appeal period, that motion will be granted.

## V. Conclusion

There was no error in holding Cynthia May responsible under the disgorgement order. However, the language of the remedial injunction must be modified. The amount requested for attorney's fees and costs also must be adjusted downward. An amended judgment accounting for these adjustments will be entered, and the appeal time will run as provided in Federal Rule of Appellate Procedure 4(a)(4).

Accordingly, it is **ORDERED** that the defendants' motion for reconsideration, for relief from the contempt judgment, or to alter or amend the judgment (ECF No. 231) is **GRANTED IN PART AND DENIED IN PART**. The remedial injunction is amended to read:

> It is **ORDERED AND ADJUDGED** that defendants Cynthia May, Graminex, L.L.C., their agents, servants, attorneys, employees, and all those in active concert and participation with them who receive actual notice of this order, are **RESTRAINED AND ENJOINED** from (A) selling any product that is identified in any manner using any of the trademarks listed in the permanent injunction entered in this case (ECF No. 85), including CERNILTON and CERNITIN; and (B) selling, transferring or conveying in any manner any product to a customer that the enjoined parties know or have reason to know uses in any way any of the trademarks listed in the permanent injunction entered in this case (ECF No. 85), including CERNILTON and CERNITIN.

The motion is **DENIED** in all other respects.

It is further **ORDERED** that plaintiff's motion for attorney's fees and costs (ECF No. 232) is **GRANTED IN PART AND DENIED IN PART**. The defendants must pay to the plaintiff attorney's fees of $639,247.51 and expenses of $94,799.13 for a total of $734,046.64.

It is further **ORDERED** that defendants' motion to deem the attorney's fee motion to have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59 (ECF No. 235) is **GRANTED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: May 12, 2021